UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

FORT LAUDERDALE DIVISION

CASE NO. _____-CIV _____/_____

Psychic Readers Network, Inc.

        Plaintiff,

v.

Take-Two Interactive Software,
Inc., Rockstar Games, Inc. and
Does 1-10

        Defendants.

**JURY TRIAL DEMANDED**

_____ /

## COMPLAINT

Plaintiff, Psychic Readers Network, Inc. ("PRN" or "Plaintiff"), by and through counsel, hereby files the following complaint against the defendants, Take-Two Interactive Software, Inc. ("Take-Two") and Rockstar Games, Inc. ("Rockstar") (collectively "Defendants") and alleges as follows:

## INTRODUCTION

1. This lawsuit stems from the Defendants' unauthorized reproduction of copyrighted materials for a character they named Auntie Poulet (or Auntie Chicken) for use in a videogame entitled Grand Theft Auto: Vice City ("Vice City"). Auntie Poulet infringes on PRN's copyright in Miss Cleo: a widely known television infomercial psychic, who PRN created and spent in excess of $100 million promoting. The Defendants' Auntie Poulet's similarities to Miss Cleo and her copyrighted attributes are of such a breadth and extraordinary nature that they can only be explained by copying – which is unsurprising given that Defendants

hired the actress who performed as Miss Cleo to provide voiceovers, using the same accent as Miss Cleo, for the infringing videogame.

## JURISDICTION AND VENUE

2. This action arises under the United States Copyright Act, 17 U.S.C. §101 et seq., and Florida law as to unfair competition.

3. At all relevant times, the Defendants have conducted business in the Southern District of Florida and are, therefore, subject to the jurisdiction of this Court.

4. Jurisdiction of the subject matter of this action is conferred on this Court by 28 U.S.C. §§ 1331, 1338(a), and 1367.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(1) and 1400(a).

6. All conditions precedent to the prosecution of this action have been satisfied, fulfilled, extinguished, waived or otherwise executed.

## THE PARTIES

7. Plaintiff Psychic Readers Network, Inc. ("PRN") is a corporation organized and existing under the laws of the State of Delaware, with it primary place of business in Fort Lauderdale, Florida. PRN operates a business offering psychic-related services and products to the public including the production of television commercials, services and products featuring the psychic known as "Miss Cleo." PRN offered their services through a number of wholly-owned subsidiaries and affiliates including: (1) Radar Communications, Inc. ("Radar"), a corporation organized and existing under the laws of the State of Florida, with its principal place of business in Fort Lauderdale, Florida, and (2) Oshun 5 Communications, Inc. ("Oshun"), a corporation organized and existing under the laws of the State of Florida, with its principal place of business

in Fort Lauderdale, Florida. PRN is the holder of copyrights (including copyrights assigned to PRN by Radar) and trademarks (including trademarks assigned to PRN by Oshun) pertaining to "Miss Cleo" visual, artistic and written works, which include marketing materials, advertisements, products, promotions and services.

8.     Plaintiff is informed and believes, and thereon alleges that Defendant Rockstar is a corporation organized and existing under laws of the State of Delaware with its principal office located in New York, New York. Rockstar produces, sells and distributes videogames throughout the United States, internationally, in the state of Florida and within the district, including the Grand Theft Auto series ("GTA").

9.     Plaintiff is informed and believes that Defendant Take-Two is a corporation organized and existing under the laws of the State of Delaware with its primary place of business in New York, New York, and is the parent company of Rockstar. Plaintiff is further informed and believes that Defendant Take-Two is responsible for overseeing the creation, approval, development and distribution of videogames (including the GTA) and other products of Rockstar, and that some of the acts described herein as having been committed by Rockstar have also been committed by Take-Two and its agents.

10.    At all relevant times, the Defendants were involved in the production, development, distribution, licensing, sale and public display of the videogame, Vice City, which infringes on PRN's copyrighted works.

11.    The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants sued herein as John Does 1 through 10, are unknown to Plaintiff, who therefore sues said defendants by such fictitious names (the "Doe Defendants"). Plaintiff will seek leave of Court to amend this complaint to state their true names and capacities when they

have been ascertained. Upon information and belief, the Doe Defendants are liable to Plaintiff as a result of their participation in all or some of the acts hereinafter set forth.

FACTUAL BACKGROUND

**A.    PRN Created Miss Cleo and Copyrighted Miss Cleo materials, Spending Over $100 Million to Promote Its Psychic Readings Services Through Miss Cleo**.

12.    In the 1990's, PRN commenced offering psychic reading services over the telephone. PRN's business grew over the years and generated hundreds of millions of dollars in revenue through the sale of pay-per-call services and other products.

13.    In or around the late 1990's, Youree Dell Harris became one of the many psychic advisors on the telephone for the psychic services offered by Plaintiff.

14.    Thereafter, Plaintiff advised the psychic advisors for its services that it was looking for an advisor to become a spokesperson for the company. Ms. Harris applied for the position. Plaintiff selected Ms. Harris and Plaintiff then created the persona, including coining the name that became known to the world as "Miss Cleo." Plaintiff retained all worldwide rights, title and interest to the Miss Cleo trademark and associated copyrights, as detailed below.

15.    Miss Cleo soon became PRN's crucial intellectual property in connection with its success in the psychic readings and services business. In particular, beginning around 2000, PRN created television commercials, infomercials, press relations, campaigns, radio spots, books, tarot cards and numerous other materials all featuring Miss Cleo (collectively, the "Miss Cleo Creatives") in order to promote its psychic services and products.

16.    PRN created and selected Ms. Harris's Miss Cleo wardrobe (including her signature colorful kaftan and turban), set design and Jamaican dialect. Moreover, PRN wrote the scripts for Miss Cleo's dialogue. In short, PRN created and was entirely responsible for the "look" and "sound" the public associates with Miss Cleo (collectively the "Look and Sound").

17.     PRN has disseminated the Miss Cleo Creatives nationwide and internationally and is entitled to all revenues arising from the exploitation of its intellectual property.[1]

18.     In this vein, PRN spent in excess of $100 million advertising and promoting their psychic services through the Miss Cleo Creatives.

19.     Radar registered the Miss Cleo Creatives copyrights with the United States Copyright Office, which include a tarot deck, book and other psychic attributes, on August 7, 2002. (A true and correct copy of the copyright registration is attached hereto as **Exhibit 1**). These Miss Cleo copyright registrations have been assigned by Radar to PRN. (A true and correct copy of this assignment is attached hereto as **Exhibit 2**).

20.     The frequency of PRN's copyrighted Miss Cleo television commercials became so prevalent that the Miss Cleo persona became famous and part of pop culture, being parodied on *Saturday Night Live*, (by Tracy Morgan and Will Ferrell), on MAD TV (by Leona Campbell) and on *Chappelle's Show*, among others.[2]

21.     PRN produced countless copyrighted television commercials and infomercials featuring the Miss Cleo Look and Sound.  PRN is the holder of seven registered copyrights with dates of first use in 2000 and registrations going back to 2001 for Miss Cleo Creatives. (True and correct copies of such registrations are attached hereto as **Exhibit 3**). The Miss Cleo Creatives contain copyright notices of PRN reserving all rights.

---

[1] It bears noting that Ms. Harris held no rights or claims to the Miss Cleo trademark, Miss Cleo Creatives or Look and Sound.  Instead, PRN paid Ms. Harris for her acting services, which were all performed as "work for hire" during her portrayal of Miss Cleo.  Ms. Harris recently passed away in July 2016, as noted herein.

[2] In fact, Miss Cleo remains popular to this day, and PRN has previously had to enforce its intellectual property rights in and to the Miss Cleo Creatives in this District.

22. PRN is the owner of all rights, title and interest in the Miss Cleo Creatives, and the rendering of expression and elements therein, and in and to the copyrights and the registrations thereof.

B. **Defendants' Infringement of Miss Cleo**.

23. According to Ms. Harris' July 2016 obituary in *The New York Times*,[3] Defendants hired Ms. Harris to voice a character in Vice City.  However, rather than creating their own original character, Defendants copied much, if not all, of the Miss Cleo Creatives' expression and protected elements, resulting in the reproduction of a character they named "Auntie Poulet" that is virtually identical to PRN's Miss Cleo.

24. This copying was no accident:  Defendants hired Ms. Harris, at the height of her popularity, to capitalize on the notoriety and fame of Miss Cleo in order to create her clone (which they named Auntie Poulet) to star in its videogame Vice City.

25. This (offensive) name change does not mask the Defendants' infringement in the Miss Cleo Creatives and the Look and Sound of PRN's vital intellectual property that it has spent years and over $100 million developing, distributing and exploiting.

26. A side by side comparison reveals that PRN's copyrighted Miss Cleo is virtually identical to Defendants' Auntie Poulet:

---

[3] Prior to reviewing this obituary (and others), PRN had no knowledge of Defendants' infringement of its intellectual property in Miss Cleo Creatives.  Specifically, it came to Plaintiff's attention in July 2016 that Defendants and/or their agents had produced and distributed the infringing videogame without Plaintiff's knowledge or authorization. This was the first time that Plaintiff learned of Ms. Harris's involvement in Vice City.  After reviewing Vice City, Plaintiff discovered Defendants' infringement and has brought this action to enforce its intellectual property rights.

**MISS CLEO**  **AUNTIE POULET**



Spooky Eyes



Auntie Poulet's PS2 appearance: gta.wikia.com



From My Heart To Yours



Rev. Booty Call



In-game screenshot: gta.wikia.com



Rev. Green Eyes Date



Screenshot:
GTA Vice City - Side Mission - Auntie Poulet #1: Juju Scramble (HD)

27.  These striking similarities are more than substantial. In particular, Defendants copied Miss Cleo's vibrantly colored caftans and turbans, as well as the patois and mysticism of

7

Miss Cleo, in designing and animating her doppelganger Auntie Poulet. Both Miss Cleo and Auntie Poulet are said to be trained in Voodoo, have a strong link to the occult, are of Afro-Caribbean origin, and reside in South Florida. Auntie Poulet is voiced by Ms. Harris, who uses the same fake Jamaican accent (rather than using a French Creole Haitian accent that would comport with Auntie Poulet's stated background) she used when performing as Miss Cleo.[4]

28. Defendants featured the Miss Cleo-cloned Auntie Poulet in Vice City, as well as in its promotions for the videogame. In addition, Defendants offered merchandise displaying the carbon copy infringement of Miss Cleo (i.e., Auntie Poulet), including laptop "skins."

29. Defendants produced and began distributing Vice City in the United States in October 2002.

30. Vice City has been a huge commercial success for the Defendants, generating what is believed to be over $500 million in revenues. Adding to Vice City's profitability is the Defendants' decision to exploit the videogame internationally.

31. Since its initial launch, Defendants have released Vice City for Microsoft Windows, Nintendo GameCube and Xbox, PlayStation 3 and PlayStation 4, and it has been bundled and sold together with other versions of the Grand Theft Auto videogame. In 2012, Defendants disseminated a tenth anniversary edition of Vice City for mobile platforms that included the infringing Auntie Poulet.

32. Defendants continue to offer Vice City for sale, and the damages suffered by PRN in connection with this ongoing distribution since 2002 continue to the present day.

---

[4] To be clear, the substantial similarities that are the subject of this dispute do not rely on Auntie Poulet's story arc in Vice City other than the occult nature of both characters, including training in Voodoo. Rather, the infringement is demonstrated by the substantial similarities between Miss Cleo and Auntie Poulet, who at a bare minimum, is a derivative work that infringes on the Miss Cleo Creatives.

33. The striking and substantial similarities between Miss Cleo and Auntie Poulet have not been lost on the public. As noted in Ms. Harris' obituary in *The Guardian*: "[Ms. Harris] continued to work as a voice artist, appearing as a ***Miss Cleo-like character, Auntie Poulet***, in the video game Grand Theft Auto: Vice City."[5]

## COUNT I
### (Copyright Infringement of Miss Cleo Creatives – Copyright Act § 101, *et seq.*)
### (Against Defendants)

34. Plaintiff restates and incorporates by reference the allegations contained in paragraphs 1 through 33 as if fully stated herein.

35. The Miss Cleo Creatives, and the rendering of expression of elements therein, constitutes copyrightable expression protected by the Copyright Act, 17 U.S.C. § 101, *et seq.*

36. As the copyright owner of the Miss Cleo Creatives and under U.S.C. §§ 106 and 501, Plaintiff is a legal or beneficial owner of the exclusive rights to reproduce the Miss Cleo Creatives, prepare derivative works based upon the copyrighted work, distribute copies of the copyrighted work and display the copyrighted work publicly.

37. The Miss Cleo Creatives and Auntie Poulet are substantially similar in look, elements, tone, character and feel. At a minimum, Auntie Poulet is a derivative work of the Miss Cleo Creatives.

38. In connection with the development and distribution of Vice City, Defendants have copied and intend to continue to copy the Miss Cleo Creatives, and the expression contained therein, without Plaintiff's license, authority or consent.

39. Defendants produced, distributed, disseminated and displayed the infringing Vice City in the United States and worldwide.

---

[5] (https://www.theguardian.com/us-news/2016/jul/27/miss-cleo-psychic-tv-infomercials-90s-dies) (emphasis added).

40. By engaging in the conduct described above, Defendants have committed and continue to commit copyright infringement in violation of the Copyright Act § 101, *et seq.*

41. Defendants' acts of infringement were willful, intentional and purposeful, in disregard of and with indifference to Plaintiff's rights.

42. As a direct and proximate result of the infringement by Defendants, Plaintiff is entitled to damages in an amount to be proven at trial.

43. Plaintiff is also entitled to Defendants' profits arising from the sales of Vice City since 2002 attributable to the infringement, pursuant to 17 U.S.C. § 504(b), including an accounting of and a constructive trust with respect to such profits.

44. Alternatively, the Plaintiff is entitled to maximum statutory damages of $150,000 for each of copyright infringement or such other amount as may be proper under 17 U.S.C. § 504 (c).

45. Plaintiff is further entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505 and otherwise according to law.

46. As a direct and proximate result of Defendants' acts and conduct, Plaintiff has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Plaintiff is informed and believes, and on that basis allege, that unless enjoined and restrained by this Court, Defendants will continue to infringe Plaintiff's rights in Plaintiff's Miss Cleo Creatives. Plaintiff is entitled to preliminary and permanent injunctive relief to restrain and enjoin Defendants' continuing and infringing conduct.

## COUNT II
**(Contributory Copyright Infringement – Copyright Act § 101, *et seq.*)**
**(Against Take-Two)**

47. Plaintiff restates and incorporates by reference the allegations contained in paragraphs 1 through 33 as if fully stated herein.

48. The Miss Cleo Creatives, and the rendering of expression of elements therein, constitutes copyrightable expression protected by the Copyright Act, 17 U.S.C. § 101, *et seq.*

49. As the copyright owner of the Miss Cleo Creatives and under U.S.C. §§ 106 and 501, Plaintiff is a legal or beneficial owner of the exclusive rights to reproduce the Miss Cleo Creatives, prepare derivative works based upon the copyrighted work, distribute copies of the copyrighted work and display the copyrighted work publicly.

50. The Miss Cleo Creatives and Auntie Poulet are substantially similar in look, sound, elements, tone, character and feel. At a minimum, Auntie Poulet is a derivative work of the Miss Cleo Creatives.

51. In connection with the development and distribution of Vice City, Rockstar has copied and intends to continue to copy the Miss Cleo Creatives, and the expression contained therein, without Plaintiff's license, authority or consent.

52. Rockstar produced, distributed, disseminated and displayed the infringing Vice City in the United States and worldwide.

53. By engaging in the conduct described above, Rockstar has committed and continues to commit copyright infringement in violation of the Copyright Act § 101, *et seq.*

54. Rockstar's copying of the Miss Cleo Creatives without Plaintiff's license, authority or consent is a willful and conscious disregard of Plaintiff's rights under the Copyright Act.

55. Take-Two had knowledge of Rockstar's direct infringement of Plaintiff's copyrighted works, the Miss Cleo Creatives because Take-Two is the parent corporation of Rockstar and owns Rockstar. As a result, Take-Two had knowledge of Rockstar's decision to infringe on the Miss Cleo Creatives and to create, develop, produce, publish and distribute the infringing work, Vice City.

56. Take-Two intentionally induced, encouraged or materially contributed to the direct infringement by overseeing, supervising, controlling, approving and/or encouraging Rockstar's creation, development, production, broadcast and distribution of the Miss Cleo Creatives. Take-Two had the final authority to green-light the production and development of Vice City. Such acts demonstrate Take-Two's substantial and continuing connection with Rockstar's direct infringement of the Miss Cleo Creatives.

57. As a direct and proximate result of Take-Two's contributory infringement of Plaintiff's copyright interest in the Miss Cleo Creatives, Plaintiff has been damaged and continues to be damaged in an amount to be determined at trial.

58. As a direct and proximate result of Take-Two's contributory infringement of Plaintiff's copyright interest in the Miss Cleo Creatives, Take-Two has made or will make profits attributable to their infringement. The amount of these profits will be determined at the time of trial.

59. Plaintiff has been and will continue to be damaged as a direct and proximate result of Take-Two's continuing acts of contributory infringement and threatened infringement, including but not limited to lost revenues and profits, damaged relations with existing and prospective business partners, and continuing loss of value of its copyright interests in the Miss Cleo Creatives.

**COUNT III**
**(Vicarious Copyright Infringement – Copyright Act § 101, *et seq.*)**
**(Against Take-Two)**

60. Plaintiff restates and incorporates by reference the allegations contained in paragraphs 1 through 33 as if fully stated herein.

61. The Miss Cleo Creatives, and the rendering of expression of elements therein, constitutes copyrightable expression protected by the Copyright Act, 17 U.S.C. § 101, *et seq.*

62. As the copyright owner of the Miss Cleo Creatives and under U.S.C. §§ 106 and 501, Plaintiff is a legal or beneficial owner of the exclusive rights to reproduce the Miss Cleo Creatives, prepare derivative works based upon the copyrighted work, distribute copies of the copyrighted work and display the copyrighted work publicly.

63. The Miss Cleo Creatives and Auntie Poulet are substantially similar in look, elements, tone, character and feel. At a minimum, Auntie Poulet is a derivative work of the Miss Cleo Creatives.

64. In connection with the development and distribution of Vice City, Rockstar has copied and intends to continue to copy the Miss Cleo Creatives, and the expression contained therein, without Plaintiff's license, authority or consent.

65. Rockstar produced, distributed, disseminated and displayed the infringing Vice City in the United States and worldwide.

66. By engaging in the conduct described above, Rockstar has committed and continues to commit copyright infringement in violation of the Copyright Act § 101, *et seq.*

67. Rockstar's copying of the Miss Cleo Creatives without Plaintiff's license, authority or consent is a willful and conscious disregard of Plaintiff's rights under the Copyright Act.

68. Take-Two had the right or ability to supervise Rockstar's direct infringement of the Miss Cleo Creatives because it owns Rockstar and ultimately oversees, approves and/or controls the creation, production and content of Rockstar's videogame production, including without limitation, Rockstar's decision to create, develop and produce Vice City. Such acts demonstrate Take-Two's substantial and continuing connection with Rockstar's direct infringement of the Miss Cleo Creatives.

69. Further, Take-Two had the right or ability to supervise Rockstar's direct infringement of the Miss Cleo Creatives because it marketed, distributed, disseminated and sold Vice City in the United States and worldwide.

70. As a result of its ability to supervise Rockstar, Take-Two could stop or limit Rockstar's direct infringement of the Miss Cleo Creatives but did not take any action to do so.

71. Take-Two had a direct financial interest in Rockstar's production, distribution and publishing of Vice City and thus profited from their direct infringement of the Miss Cleo Creatives.

72. As a direct and proximate result of Take-Two's vicarious infringement of Plaintiff's copyright interest in the Miss Cleo Creatives, Plaintiff has been damaged and continues to be damaged in an amount to be determined at trial.

73. As a direct and proximate result of Take-Two's vicarious infringement of Plaintiff's copyright interest in the Miss Cleo Creatives, Take-Two has made or will make profits attributable to their infringement. The amount of these profits will be determined at the time of trial.

74. Plaintiff has been and will continue to be damaged as a direct and proximate result of Take-Two's continuing acts of vicarious infringement and threatened infringement,

including but not limited to lost revenues and profits, damaged relations with existing and prospective business partners and continuing loss of value of its copyright interest in the Miss Cleo Creatives.

### COUNT IV
### (Unjust Enrichment)
### (Defendants)

75. Plaintiff restates and incorporates by reference the allegations contained in paragraphs 1 through 33 as if fully stated herein.

76. By using the Plaintiff's Look and Sound in Vice City without paying Plaintiff, Defendants acquired a benefit from Plaintiff.

77. Defendants have retained the benefit under circumstances that would make it unjust and inequitable for Defendants to retain the benefits without paying Plaintiff for the value of the benefits acquired.

**WHEREFORE**, Plaintiff prays for judgment against Defendants, and each of them, jointly and severally, as follows:

1. For statutory and/or compensatory damages in such amount as may be found, or as otherwise permitted by law;

2. For an accounting of, and the imposition of constructive trust with respect to Defendants' profits attributable to their infringements of Plaintiff's copyrights.

3. For a preliminary and permanent injunction prohibiting Defendants, and their respective agents, servants, employees, officers, successors, licensees and assigns, and all persons acting in concert or participation with each or any of them, from continuing to infringe Plaintiff's copyright in the Miss Cleo Creatives.

4. For the value of the benefits they have acquired from the use of the Look and Sound and Miss Cleo Creatives;

5. For prejudgment interest according to law;

6. For Plaintiff's attorneys' fees, costs, and disbursements in this action; and

7. For such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands trial by jury.

Dated: July 26, 2017

Respectfully submitted,

SINCLAIR LOUIS & ZAVERTNIK, P.A.

By: /s/ Courtney Caprio
Courtney Caprio, Esq.
Florida Bar No. 933961
Sinclair Louis & Zavertnik, P.A
40 Northwest Third Street, Suite 200
Miami, FL 33128
Telephone: (305) 374-0544
Fax: (305) 381-6869

DICHTER LAW, LLC

By: /s/ Joel R. Dichter
Joel R. Dichter, Esq.
NYS Bar No. 1687557
Dichter Law LLC
488 Madison Ave. 18th Floor
New York, NY 10022
Telephone: (212) 593-4202
Fax: (212) 994-5394
(*pro hac vice* pending)

*Attorneys for Plaintiff*